# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

CHRISTY KAY DAMS,

        Plaintiff,

vs.

CITY OF WAVERLY and WAVERLY
MUNICIPAL HOSPITAL a/k/a
WAVERLY HEALTH CENTER,

        Defendants.

No. C04-2077

**ORDER**

———————————————

This matter comes before the court pursuant to the defendants' December 15, 2005 motion for summary judgment (docket number 13). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. For the reasons set forth below, the motion for summary judgment is denied in part and granted in part.

## I. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Christy Kay Dams ("Dams") worked as a Human Resources Associate for the Waverly Municipal Hospital, a.k.a Waverly Health Center, from September 3, 2002 to March 8, 2004. The Human Resources department was comprised of Dams and her immediate supervisor, Karen Buls. In December 2002, Buls conducted Dams' 90-day review to determine whether her probationary period would continue or whether she would be made a regular employee. Buls had some concern about Dams' ability to interact with her co-workers and characterized Dams' communication skills as marginal. However, Buls recommended that Dams be made a regular employee.

On March 28, 2003, Dams underwent her annual employment evaluation with Buls. Buls scored Dams as "meet expectations" in the area of Quality/Customer Service and

Interpersonal Communication.  Buls also noted that Dams had improved in this area since her 90-day evaluation.

During Dams' employment, the CEO of Waverly Health Center, Michael Trachta, had received complaints from Dams' co-workers regarding her behavior.  Trachta requested that Buls discuss proper behavior with Dams.  However, no disciplinary action was taken and no written warning was ever given to Dams during her employment at Waverly Health Center.

Dams became pregnant in late 2003 and informed Waverly Health Center and her co-workers of her pregnancy in November and December 2003.  Following the announcement of her pregnancy, Dams and Buls had several conversations concerning the amount of leave she planned to take.  In January 2004, Buls asked Dams if she was planning to take eight or twelve weeks of leave.  When Dams responded that she would be taking twelve weeks she believed Buls was unhappy with her decision and would prefer that she take eight weeks leave.

In February 2004, Dams and Buls had a conversation about Buls' desire to hire a third person in the Human Resources department.  Trachta had previously denied Buls' request to hire a third person or an intern in the department and Buls was concerned with how she was going to manage her increased workload with Dams on leave.  On March 1, 2004, Dams approached Buls about taking vacation time for some unanticipated travel.  Dams felt that Buls attempted to condition granting the vacation time on Dams taking only eight weeks maternity leave.  Dams responded that the vacation time had nothing to do with her FMLA leave.

During this time Trachta had several encounters with Dams in which he believed Dams had acted unprofessionally and inappropriately.  The first incident occurred when Trachta asked Dams to complete a task for him by the end of the day and Dams responded that she was too busy.  The second incident occurred when Dams sent Trachta an email requesting that the hospital change its policy as to who could perform cesarean section deliveries so that her doctor could perform her cesarean section.

A February 17, 2004 meeting between Dams and Trachta precipitated the events that led to Dams' termination. At the meeting, Dams made comments which Trachta believed were inappropriate. Trachta directed Buls to conduct an investigation to determine whether other people in the hospital were having similar problems with Dams. Buls apparently found several managers and co-workers who had adjusted their actions so as not to come in contact with Dams.

On March 8, 2004, Trachta and Buls met with Dams for the purpose of terminating her employment. The reason given for her termination was that the Waverly Health Center had received numerous complaints from co-workers regarding Dams' behavior. Dams was not informed as to the nature or number of complaints that were made against her. Dams was not allowed to respond to the complaints in her defense.

## II. PROCEDURAL HISTORY

Dams filed suit against Waverly Health Center and the City of Waverly and alleging gender discrimination in violation of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000, gender discrimination in violation of the Iowa Civil Rights Act, I.C.A. § 216, and retaliatory termination in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. Specifically, Dams alleges that her employment was terminated and she was otherwise discriminated against because she was pregnant and planned to take twelve weeks of FMLA leave due to her pregnancy.

Dams has exhausted her administrative remedies and has applied for and received administrative right-to-sue letters from the Iowa Civil Rights Commission and the United States Equal Employment Opportunity Commission.

The defendants filed a motion for summary judgment on December 15, 2005, arguing that Dams cannot establish a prima facie case of unlawful retaliation because there is no evidence of a causal link between her termination and the protected activity, that there is a legitimate nondiscriminatory reason for Dams' termination, and that the City of Waverly is not an appropriate party to this cause of action.

Dams resisted the defendants' motion for summary judgment on January 12, 2006. Dams argued that she is able to present sufficient evidence to meet her burden of establishing a prima facie case of discrimination based on gender and retaliation for exercising rights under the FMLA, and that there is a genuine issue of material fact as to whether the defendants' proffered nondiscriminatory reason for her termination is pretextual.

## III.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986).  "To preclude the entry of summary judgment, the nonmovant must show that on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact."  Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  Although "direct proof is not required to create a jury question, . . . to avoid summary judgment 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'"  Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)).  In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence.  Krause v. Perryman, 827 F.2d 346, 350 (8th Cir. 1987).

In the context of employment discrimination cases, summary judgment should be used sparingly.  Hardin v. Hussman, 45 F.3d 262, 264 (8th Cir. 1995) (citations omitted).  "'Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.'"  Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995) (quoting Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994)).

# IV. TITLE VII AND THE FAMILY MEDICAL LEAVE ACT

## A. Discrimination/Retaliatory Discharge Framework

The Eighth Circuit uses the <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973), burden-shifting framework for claims of both discrimination under the Federal Civil Rights Act of 1964 and retaliatory discharge claims arising under the FMLA. To establish a prima facie case of discrimination based on Title VII of the Civil Rights Act, the plaintiff must prove that (1) she was a member of a protected class; (2) she was capable of performing the job; and (3) she was discharged under circumstances giving rise to an inference of discrimination. <u>Hanenburg v. Principle Mut. Life Ins. Co.</u>, 118 F.3d 570, 574 (8th Cir. 1997). The framework for establishing a prima facie case of discrimination under the Iowa Civil Rights Act is the same as under federal law. <u>Walker v. Fred Nesbitt Distrib.</u>, 331 F. Supp.2d 780, 785 (S.D. Iowa 2004) (citing <u>Quick v. Donaldson Co., Inc.</u>, 90 F.3d 1372, 1380 (8th Cir. 1996)). "As a preliminary matter, it should be noted that in considering [the plaintiff's] discrimination claims, the court will generally make no distinction between claims based on federal law and comparable claims based on state law." <u>Wensel v. State Farm Mut. Auto. Ins. Co.</u>, 218 F. Supp.2d 1047, 1055 (N.D. Iowa 2001). The Iowa Supreme Court has recognized that federal precedent is applicable to discrimination claims under the ICRA. <u>Id.</u> (citing <u>Vivian v. Madison</u>, 601 N.W.2d 872, 873 (Iowa 1999)). Thus, the court will analyze the state and federal discrimination claims together. To establish a prima facie case of retaliation under the FMLA, the plaintiff must show that (1) she engaged in activity protected by the FMLA; (2) her employer took adverse employment action against her; and (3) there is a causal connection between her protected activity and the employer's adverse employment action. <u>Smith v. Allen Health Systems</u>, 302 F.3d 827. 892 (8th Cir. 2002).

Once a plaintiff establishes a prima facie case, the employer must then rebut the plaintiff's prima facie case with evidence of a legitimate, nondiscriminatory reason for taking the adverse employment action. <u>Id.</u> at 802-03. "The employer's explanation of its action must be 'clear and reasonably specific', but the employer does not have to prove to

the court that it was motivated by the proffered reason." White v. McDonnell Douglas Corp., 985 F.2d 434, 436 (8th Cir. 1993) (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)) (internal citations omitted). If the employer can rebut the plaintiff's prima facie case, the plaintiff must show "sufficient admissible evidence from which a rational factfinder could find the [employer]'s proffered nondiscriminatory reason was either untrue or not the real reason, and that intentional discrimination was the real reason.'" Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir. 1997).

## B. Plaintiff's Prima Facie Case

Dams claims that she can establish her prima facie case on gender discrimination because (1) she was pregnant at the time of the alleged discrimination, making her a member of a protected class under 42 U.S.C. § 2000e(k); (2) she was qualified for her position; and (3) comments by Buls give rise to an inference of discrimination. Dams' asserted prima facie case for relief under the FMLA is: (1) she exercised rights afforded by the FMLA when she requested twelve weeks maternity leave; (2) she suffered an adverse employment action when she was terminated on March 8, 2004; and (3) Buls' comments establish a causal connection between the exercise of her rights and the adverse employment action.

The defendants do not dispute that Dams has established the first two prongs of both her prima facie case of gender discrimination and FMLA retaliation. Because the final prong of both prima facie cases requires essentially the same proof, and Dams uses the same evidence to establish both an inference of discriminatory intent and a causal link between her termination and her leave, this court will consider the two claims together.

### 1. Defendants' Arguments

In their motion for summary judgment, the defendants argue that Dams cannot establish her prima facie case as a matter of law because there is no evidence of a causal link between the protected activity and her termination. The defendants contend that Buls'

questions regarding the length of Dams' FMLA leave were questions that any employer would ask for planning purposes, and that they are in no way discriminatory on their face.

Secondly, the defendants argue that Buls' comments regarding her desire to hire a third employee in the HR department were made prior to the time the plaintiff announced her pregnancy. The defendants assert that the comments surrounding this desire to hire a third employee are isolated and ambiguous and in no way discriminatory on their face.

In addition, the defendants contend that because Dams' termination was initiated and directed by Trachta, who was not a party to any of comments made by Buls, her comments cannot establish a causal link between the Dams' leave and her termination.

The defendants also argue that the temporal proximity between the time Dams told Buls of the intended length of her leave and her termination is insufficient to establish a causal link. The defendants point to Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002), to show that because the Eighth Circuit has held that a two-month interval between protected activity and termination was not sufficient to establish a causal link as a matter of law, and there were over three months between Dams' termination and her intended FMLA leave, Dams can similarly not establish a causal link.

## 2. Plaintiff's Arguments

Dams argues that conversations she had with Buls between the time she announced her pregnancy and the time she was terminated establish an inference of discrimination and a causal connection between her FMLA leave and her termination. Dams asserts that in January 2004 she had a conversation with Buls in which Buls inquired as to how much maternity leave Dams intended to take. When Dams responded that she would be taking twelve weeks, she believed that Buls reacted in a condescending manner and that this was a suggestion by Buls that Dams should only take eight weeks of FMLA leave.

Dams further argues that in a telephone conversation in February 2004 Buls expressed her concern about how she would handle the HR workload once Dams went on leave. Dams felt that because Buls' requests to hire a third person or an intern for the HR

department were denied by Trachta, the only other option was to fire Dams in order to hire another employee who would not be taking leave.

Finally, Dams points to a March 1, 2004 conversation she had with Buls concerning vacation time that Dams was seeking in order to take advantage of an unexpected travel opportunity. Dams argues that because Buls asked her whether she would still take twelve weeks leave if Buls allowed her to take the additional vacation, this establishes an inference of discrimination based on her pregnancy and a causal connection between her protected FMLA activity and her termination.

### 3. Analysis

"The prima facie burden is not so onerous as, nor should it be conflated with, the issue of [discrimination or retaliation]." Landon v. Northwest Airlines, 72 F.3d 620,624 (8th Cir. 1995). The Eighth Circuit recently held that "the kind of causal connection required for a prima facie case is not 'but for' causation, but rather a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" McBurney v. Stew Hanson's Dodge City, 398 F.3d 998, 1003 (8th Cir. 2005) (quoting Kipp v. Missouri Highway & Transp/ Comm'n, 280 F.3d 893, 897 (8th Cir. 2002)).

Dams has pointed to evidence which shows that a retaliatory motive played a part in her termination. Dams was questioned by Buls on two occasions as to the amount of FMLA leave she would be taking. Such inquiries, alone, are perfectly appropriate. On both occasions, Buls suggested that eight weeks would be more appropriate to take than the twelve weeks guaranteed by the FMLA. On the last occasion, one week prior to Dams' termination, Buls attempted to condition granting Dams' unrelated vacation time on taking only eight weeks of leave. Buls' concerns about how the HR department was going to handle the workload also support an inference of discrimination. While Trachta testified in his deposition that Buls had approached him about hiring a third HR employee before Dams notified the hospital of her pregnancy, Buls' concerns were heightened as Dams' due-date drew nearer. These statements, coupled with the fact that Dams' personnel file contained no verbal or written warnings or suspensions prior to her

termination, establish an inference that retaliation and discrimination played a part in Dams' termination. Thus, Dams has met her burden of establishing a prima facie case.

## C. Defendants' Legitimate Nondiscriminatory Explanation

Once the plaintiff has carried her burden of establishing a prima facie case for discrimination/retaliation, the burden shifts to the defendants to offer a legitimate nondiscriminatory explanation for the adverse employment action. Smith v. Allen Health Sys., 302 F.3d 827, 832 (8th Cir. 2002). The defendants' asserted reason for terminating Dams is due to complaints about her customer service from managers and co-workers and her overall lack of professionalism. The defendants have come forward with evidence that Trachta believed Dams acted unprofessionally on several occasions. The first occurred when Dams informed Trachta that she was too busy to complete a task that he asked her to perform. Trachta felt as though she should honor any request from the CEO of the company at which she was employed. The second instance the defendants point to concerns an email that Dams sent to Trachta to request that the hospital change its policy in order to allow her physician to perform her cesarean section at the hospital. The final incident occurred at a February 17, 2004 meeting, during which Dams made several comments that Trachta felt were inappropriate and unprofessional. Following the meeting, Trachta asked Buls to perform an inquiry into Dams' customer service relations with the staff hospital-wide. Buls discovered that many employees and managers had altered their conduct so as to avoid the plaintiff. Because of his own concerns and the comments made by other hospital staff, Trachta, in consultation with Buls, determined that Dams should be terminated.

## D. Plaintiff's Showings of Pretext

Because the defendants have presented a legitimate non-discriminatory reason for the discharge, the plaintiff must show "sufficient admissible evidence from which a rational factfinder could find that the [employer]'s proffered nondiscriminatory reason was either untrue or not the real reason, and that intentional discrimination was the real reason." Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir. 1997). See also Krenik v.

County of Le Seur, 47 F.3d 953, 959 (8th Cir. 1995). Dams points to several reasons why the defendants' nondiscriminatory explanation is unworthy of credence. First, Dams notes that her personnel file contains no verbal or written warnings. She has never been subject to a disciplinary action due to a complaint about her customer service. See Scheidecker v. Arvig Enters., 122 F. Supp.2d 1031 (D. Minn. 2000) (finding that the plaintiff had established a genuine issue of material fact as to pretext based in part on the fact that the plaintiff had not received any written discipline or warning prior to the day she was terminated). Dams contends that, while her 90-day evaluation noted problems with her ability to interact with others, her probationary period was ended and she was made a regular employee in light of the evaluation. Further, Dams notes that her next evaluation showed improvement in the area of customer service.

Moreover, Dams points to two employees who were similarly situated, but not pregnant nor taking FMLA leave, who received more lenient treatment in response to similar concerns. "An employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees." Smith v. Allen Health Sys., 302, F.3d 827, 835 (8th Cir. 2002) (citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). The first concerns a conflict between co-workers in which one employee stuck another employee during a physical altercation. This employee received a suspension with pay. A second employee had been the subject of complaints similar to Dams and received a warning and was required to participate in company-sponsored counseling.

Dams also argues that Buls' comments to her about workload concerns while Dams was on leave are indicative of Dams' value and contributions to the HR department. Dams asserts that because she was such an asset to the department, the hospital would likely not have terminated her employment absent discriminatory intent.

Finally, Dams contends that the timing of her termination is evidence of pretext. Dams announced that she was pregnant in November and December 2003. The conversations that Dams offers between herself and Buls took place over the next three

months before Dams was terminated on March 8, 2004. The Eighth Circuit has held that timing alone cannot support an inference of pretext. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."). However, when there is additional circumstantial evidence that supports a finding of pretext, evidence of temporal proximity to establish pretext has survived summary judgment. See Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1020 (8th Cir. 2005). The record shows that Dams was terminated on March 8, 2004, three months before her intended FMLA leave.

The court finds that the circumstances surrounding the Dams' termination, coupled with the temporal proximity between her termination and her intended leave have created issues of material fact regarding whether the defendants' asserted nondiscriminatory explanation for Dams' termination is pretextual. Thus, Dams has met her burden of establishing issues of material fact and the defendants' motion for summary judgment is denied as to her claims for discrimination under Title VII of the Civil Rights Act of 1964 and the Iowa Civil Rights Act and retaliation under the FMLA.

## V.  CITY OF WAVERLY IS NOT AN APPROPRIATE PARTY TO THIS SUIT

The defendants argue that because Waverly Health Center is a hospital chartered under Iowa Code § 347, it is a county hospital, run by an independent board and is an independent legal entity from the city.[1] Dams does not resist this contention in her brief in support of resistance to the defendants' motion for summary judgment. The unresisted motion to dismiss the City of Waverly from the suit is granted.

---

[1] In their anser, the defendants admit to the plaintiff's claim that Waverly Health Center is a public hospital and/or health care facility and is duly created and existing pursuant to Iowa Code § 392, making it a municipal hospital. However, in its motion for summary judgment that defendants contend that the hospital was chartered under Iowa Code § 347, making it a county hospital.

Upon the foregoing,

**IT IS ORDERED** that the defendants' December 15, 2005 motion for summary judgment (docket number 13) is denied as to the plaintiff's claims of discrimination under the Title VII of the Federal Civil Rights Act and the Iowa Civil Rights Act and retaliation under the FMLA.  Defendants' motion for summary judgment is granted as to the City of Waverly.

March 2, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT